Alphonso Nicholas Faggiolo,
713 Lamp Post Lane.
Aston, Pennsylvania 19014
610-818-7167
*Plaintiff.*

# DISTRICT COURT OF THE UNITED STATES
## for the
## Eastern District of Pennsylvania

**Case Number:** 2:23-cv-04920

Alphonso Nicholas Faggiolo
*Plaintiff,*

vs.

BOROUGH OF RIDLEY PARK, et al.,
*Defendants.*

## PLAINTIFF'S REPLY TO DEFENDANT MARY J. WALK

  Plaintiff submits this Reply Brief with Exhibits, pursuant to Section IV - Motions Practice, B - Reply Briefs, of the Honorable Joel Slomsky's Scheduling And Motion Policies And Procedures.

1. Defendant prothonotary Mary J. Walk and her attorney, Michael F. Schleigh, Id # 88407, who have both taken an oath to protect the people's rights and the Constitution, appear unable to analyze and comprehend what they're reading, and therefore believe that depriving the Plaintiff, **a NON-TAXPAYER pursuant to Commonwealth statutes**, of secured rights by taking his money/home/property **under the color of municipal tax codes**, through the **counterfeiting/falsification of property assessments**, judgments, writs of scire facias, and writs of execution, is frivolous and not a claim upon which relief can be granted, demonstrating a severe mental impairment of cognitive abilities to interpret and apply the law and the Constitution, without regard to whether Defendant Walk and her attorney Schleigh approve or disapprove of the laws or the subject matter of this action.

*Page 1 of 6*

> *To establish a prima facie case under 42 U.S.C. § 1983, plaintiffs must allege two elements: (1) the **action occurred "under color of law"** and (2) the **action is a deprivation of a constitutional right** or a federal statutory right. **Parratt vs. Taylor**, 451 U.S. 527, 535 (1981).*
>
> *The court must treat the complaint's **factual matter as true** and construe Plaintiff's complaint in the light most favorable to Plaintiff "**even if doubtful in fact**." See **Erickson vs. Pardus**, 551 U.S. 89 (2007); **Scheuer vs. Rhodes**, 416 U.S. 232, 236 (1974).*

2.  It's a FACT that in response to a 17th of May 2019 Pennsylvania Right to Know Record Request (No. 2019-146), Anne M. Coogan, speaking for the County of Delaware, averred: *"With regard to your request for the operating procedures that your agency follows, to assess my property for the purpose of taxation, **we adhere to the uniform standards of professional appraisal practice** (USPAP) and Act C3P.S. 457.1-457.19 aka the Real Estate Appraisal Certification Act".* **See Exhibit A - "Anne M. Coogan Response"**

> *"**USPAP** contains the **standards for all types of appraisal services**: real estate, personal property, business **and mass appraisal**." Masalehdan v. ALLEGHENY COUNTY BD., 931 A. 2d 122 - Pa: Commonwealth Court 2007.*
>
> **USPAP ETHICS RULE (MANAGEMENT):** "**An appraiser must affix**, or authorize the use of, **his or her signature to certify recognition and acceptance of his or her USPAP responsibilities in an appraisal** or appraisal review assignment (see Standards Rules 2-3, 4-3, 6-3, 8-3, and 10-3). An appraiser may authorize the use of his or her signature only on an assignment-by-assignment basis."
>
> *"Assessment officer shall sign the summary record of assessments made against any taxpayer, that said, acting through supporting records, shall provide identification of the taxpayer, the character of the assessed, the taxable period as applicable, and the amount of the assessment. The date of the assessment is the date of the summary record that is signed by an assessment officer. (See 26 U.S.C. A. sec. 301 and 6203 (1'), code of federal regulations)." "Assessment certification must be signed or the certificate is void." "Since the certificate lacks the required signature it cannot constitute a valid assessment." (Id., at 865, 66)* **Brafman vs. U.S.** 384, F. 2d 863 (5th Cir. 1967).

3.  It's a FACT that Aida Dedajic, the Standards Board Program Manager at "The Appraisal Foundation" stated the following, *"When an appraiser says that they are complying with USPAP, they mean that they must meet the following obligations: 1) **An appraiser must maintain the data, information and analysis necessary to support his or her opinions for appraisal and appraisal review assignments in accordance with the RECORD KEEPING RULE, 2) When an appraiser provides an opinion of value in an assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, the applicable development and reporting Standards and applicable Statements (there are currently no active Statements).* **See Exhibit B - Aida Dedajic email**

**The Record Keeping Rule** in USPAP **requires that appraisers** performing USPAP-compliant appraisals **maintain records of those appraisals for a minimum of five years**. **The rule also states that all supporting documentation used in the development of an appraisal is maintained for a minimum of five** years **after the report date**. **The work file must include all other data, information, and documentation necessary to support the appraiser's opinions and conclusions and to show compliance with USPAP, or references to the location(s) of such other documentation.** When an appraiser provides an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the

**The Scope of Work Rule** is a part of the USPAP that requires appraisers to determine the scope of work for each appraisal and appraisal review assignment. The rule requires appraisers to identify the *problem* to be solved, determine and perform the scope of work necessary to develop credible assignment results, **and disclose the scope of work in the report**. The scope of work **should be clearly defined with accurate and unambiguous information.**

4.  Plaintiff is not arguing, he's judicially noticing the court of the adjudicative FACT that **the County of Delaware** has already averred through its records coordinator, Anne M. Coogan's sworn affidavit, that it **has no SIGNED legally and lawfully promulgated records to support the existence of property assessments for Plaintiff's three properties**, let alone property assessments **ADHERING to USPAP** standards or ADHERING to the requirements of Pennsylvania Statutes Title 53 § 8842 (b)(1)(iii). These property record cards, which **ALL** named Defendants relied upon as the basis of their authority to adversely act against the Plaintiff and Plaintiff's properties, are **not property assessments by any acknowledged standards for what constitutes legally and lawfully promulgated assessments**. See Richard Tutak's Affidavit, for multiple references to the existence of **Defendant Borough of Ridley Park's reliance on County of Delaware assessments, which Plaintiff has provided as an Exhibit in all of his responses to the Defendants' 12b(1)(6) motions.**

5.  **Without any required records or witnesses,** attorney Michael Schleigh presented **50 property record cards,** to this court, as being evidence of valid property assessments of Plaintiff's three properties, **which neither he nor his client Mary J. Walk have any personal knowledge of,** and which all named Defendants relied upon and acted upon. Third-party private company Tyler Technologies' CAMA system, that created Schleigh's 50 provided property record cards, is a **"black box"**, that FACTUALLY meets no required

criteria or elements of legally and lawfully promulgated property assessments for Plaintiff's three properties.

> **Black Box:** 1) a usually complicated electronic device whose internal mechanism is usually hidden from or mysterious to the user; 2) anything that has mysterious or unknown internal functions or mechanisms. **Merriam-Webster Dictionary**
>
> **Section 5.5 Value Defense:** "The assessment office staff must have confidence in the appraisals and be able to explain and defend them. The staff should also be prepared to support individual valuations as required, preferably through comparable sales." "A property owner should never be told simply that "the computer" or "the system" produced the appraisal. **Standard on Mass Appraisal – International Association of Assessing Officers (IAOO)**".

6. Further, it's a FACT that pursuant to Federal Rule of Evidence 602 (Need for Personal Knowledge), none of the named Defendants or their attorneys, no employees of the County of Delaware, and no employees of Tyler Technologies have provided any evidence or records, whatsoever, that they are witnesses with personal knowledge of the existence of property assessments for the Plaintiff's three properties; wherefore all of the named Defendants and their attorney's arguments against the Plaintiff's Judicial Notice, are complete HEARSAY pursuant to Federal Rule of Evidence 802 (The Rule Against Hearsay).

## Federal Rule of Evidence 201

7. Pursuant to Federal Rule of Evidence 201(a) the existence of property assessments for the Plaintiff's three properties **is an adjudicative fact**, not a legislative fact. It's a FACT that **Tyler Technologies is a private third-party company with no inherent powers to do anything, or to create anything, regarding the Plaintiff's three properties**. As the Plaintiff's Pennsylvania Right To Know record request evidences, the Plaintiff requested the **"complete property assessments, which means all of the paperwork for the assessments"**. Clearly, this meant everything which the County of Delaware provided to Tyler Technologies and everything that Tyler Technologies provided to the County of Delaware, which would also include a **record of the authorization that was provided to third-party private company Tyler Technologies, granting it legal authority to create legal documents (property assessments) that were to be used as security instruments** for the Plaintiff's three properties. It's an adjudicative FACT that the County of Delaware averred through its records coordinator, Anne M. Coogan, **that it has no other records** besides Tyler Technologies 2-page property record cards (6 pages total for the

Plaintiff's 3 properties) from third-party vendor Tyler Technologies' "black box" CAMA system.

> **COUNTERFEIT.** *"In criminal law. To forge; to copy or **imitate, without authority or right, and with a view to deceive or defraud, by passing the copy or thing forged for that which is original or genuine**. Most commonly applied to the fraudulent and criminal imitation of money."* State v. McKenzie, 42 Me. 392; *U. S. v. Barrett, D.C.N.D.,* 111 F. 369; *DeRose v. People,* 64 Colo. 332, 171 P. 359, L.R.A.1918C, 1193; Metropolitan Nat. Bank v. National Surety Co., D.C.Minn., 48 F. 2d 611, 612.

**8.** Pursuant to Federal Rule of Evidence 201(b)(2), the accuracy of County of Delaware Record Coordinator Anne M. Coogan's sworn affidavits cannot reasonably be questioned, which aver and **support the Plaintiff's Judicial Notice**, regarding the FACT that the County of Delaware had no "additional" records to provide to the Plaintiff, and that the Plaintiff was provided every record the County possessed, which was only the 2-page property record cards (6 pages total for the Plaintiff's 3 properties), identical to the 50, 2-page property record cards, provided by attorney Michael Schleigh who is acting for prothonotary Defendant Mary J. Walk. Further, Coogan's record request response avers that the County of Delaware ADHERES to USPAP standards, yet the County FAILED to provide the Plaintiff any records to support that claim. **See Exhibit A**

**9.** Pursuant to Federal Rule of Evidence 201(c), the Plaintiff has supplied the court with the necessary information, including sworn affidavit from the County of Delaware's own records coordinator, Anne. M. Coogan. **It defies logic and is incredulous** that ALL named Defendants, and their attorneys, contend that valid, legally and lawfully promulgated property assessments, were created by some **UNKNOWN EMPLOYEES from Tyler Technologies**, a third-party private company, operating "FOR PROFIT AND FINANCIAL GAIN", which arbitrarily and capriciously manufactured and entered data for the Plaintiff's three properties into its "black box" CAMA system, and then generated **UNSIGNED and UNVERIFIED** 2-page "property record cards" (6 pages total for the Plaintiff's 3 properties), with no other records to support their actions or their purported data.

**10.** Pursuant to Federal Rule of Evidence 201(d), timing of the Plaintiff's Judicial Notice is clearly appropriate as "the court may take Judicial Notice at any stage of the proceeding".

**11.** Pursuant to Federal Rule of Evidence 201(e), all Defendants are **STIL** provided the "opportunity to be heard" and provide any witnesses that claim to have personal knowledge of the existence of property assessments, and all of the witnesses' supporting evidence that they claim, constitutes evidence that property assessments actually exist for the for the Plaintiff's three properties. Clearly, Tyler Technologies, a third-party "for profit" private company, with a financial interest in manufacturing and creating documents for Plaintiff's three properties, is a source whose motives, credibility, data, and actions, can reasonably be questioned.

# Submitted this 25th day of April 2024.

by_____
       Alphonso Nicholas Faggiolo
                *Plaintiff*

### Certificate of Service

I, Alphonso Nicholas Faggiolo, certify that on the 25th day of April, 2024, a true and correct copy of the above has been electronically mailed to:

MICHAEL F. SCHLEIGH: mschleigh@hardinlawpc.net, amollai@hardinlawpc.net, amoore@hardinlawpc.net

DONALD E. WIEAND, JR: dew@stevenslee.com, lak@stevenslee.com

KATHERINE H. MEEHAN: meehan@raffaelepuppio.com

NICOLE A. FEIGENBAUM: nicole.feigenbaum@pacourts.us, legaldepartment@pacourts.us

ERNEST S. ANGELOS: eangelos@raffaelepuppio.com, Altieri@raffaelepuppio.com



**COUNCIL**

JOHN P. MCBLAIN
CHAIRMAN

COLLEEN P. MORRONE
VICE CHAIRMAN

MICHAEL F. CULP
KEVIN M. MADDEN
BRIAN P. ZIDEK

**OPEN RECORDS**
**GOVERNMENT CENTER BUILDING**
201 W. FRONT STREET
MEDIA, PENNSYLVANIA 19063

PHONE: (610) 891-4260

ANNE M. COOGAN
OPEN RECORDS OFFICER

Exhibit A

May 28, 2019

Mr. Alphonso Faggiolo
713 Lamp Post Lane
Aston, PA 19014

Re: Right-To-Know Law Request No. 2019-146

Dear Mr. Faggiolo:

This letter acknowledges receipt by the County of Delaware Office of Open Records of your written request which you made under the *Pennsylvania Right-to-Know Law (Act 3 of 2008, 65 P.S. § 67.101, et seq.) ("RTKL")*. This office received your request on May 17, 2019. Therefore, under the RTKL, a written response to your request was due on or before May 28, 2019. This letter is provided pursuant to that requirement.

With regard to your request for "the statutes, codes, and laws, that your agency cites as authority to assess my property for the purpose of taxation", the Statute is Pennsylvania Assessment Law 72 P.S. 5452.et.seq.

With regard to your request for the operating procedures that your agency follows, to assess my property for the purpose of taxation", we adhere to the uniform standards of professional appraisal practice and Act C3P.S. 457.1-457.19 aka the Real Estate Appraisal Certification Act.

With regard to your request for "copies of the current assessments, that are being used for the purpose of taxation, for my 3 properties, listed below:

713 Lamp Post Lane, Asto, Pennsylvania 19014;
505 Johnson Avenue, Ridley Park, Pennsylvania, 19078;
215 Kane Avenue, Ridley Park, Pennsylvania 19078"

Mr. Alphonso Faggiolo
May 28, 2019
Page 2

We have reviewed your request and determined that we may have records that are responsive to your request and those records are "public records" for purposes of the *Right-to-Know Law*. Attached please find the document you requested.

With regard to your request for "the names and titles of the people that performed each of the current assessments for my properties, listed in section 3", these properties assessments were performed by CLT (now Tyler Tech) in 1997.

With regard to your request for "the names and titles of the people in your agency that determine which properties are taxable", all properties are taxable except those given exempt status by the Board of Assessment Appeals. The members of the Board of Assessment Appeals are as follows:

      John Ryan, Chairman
      Jeffrey Rudolph, Member
      Ernest Aguirre, Member

Please be advised that this correspondence will serve to close this record with our office as permitted by law.

      Sincerely,

      *Anne M. Coogan*

      Anne M. Coogan
      Open Records Officer
      County of Delaware

 **Exhibit B** Alphonse Faggiolo <alfadogmusic@gmail.com>

---

**In accordance with USPAP**
---

**Aida Dedajic** <aida@appraisalfoundation.org>  Tue, Jul 30, 2019 at 11:12 AM
To: Alphonse Faggiolo <alfadogmusic@gmail.com>

Hi Alphonse,

Thank you for contacting The Appraisal Foundation. When an appraiser says that they are complying with USPAP, they mean that they must meet the following obligations:

• An appraiser must act competently and in a manner that is independent, impartial, and objective.

• An appraiser must comply with the ETHICS RULE in all aspects of appraisal practice.

• An appraiser must maintain the data, information and analysis necessary to support his or her opinions for appraisal and appraisal review assignments in accordance with the RECORD KEEPING RULE.

• An appraiser must comply with the COMPETENCY RULE and the JURISDICTIONAL EXCEPTION RULE for all assignments.

• When an appraiser provides an opinion of value in an assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, the applicable development and reporting Standards and applicable Statements (there are currently no active Statements).

• When an appraiser provides an opinion about the quality of another appraiser's work that was performed as part of an appraisal or appraisal review assignment, the appraiser must also comply with the SCOPE OF WORK RULE, the RECORD KEEPING RULE, applicable portions of STANDARDS 3 and 4, and applicable Statements (there are currently no active Statements).

• When preparing an appraisal or appraisal review that is a component of a larger assignment with additional opinions, conclusions, or recommendations, the appraisal or appraisal review component must comply with the applicable development and reporting Standards and applicable Statements (there are currently no active Statements), and the remaining component of the assignment must comply with the ETHICS RULE, the COMPETENCY RULE, and the JURISDICTIONAL EXCEPTION RULE.

Thanks,

Aida


**Aida Dedajic**

**Standards Board Program Manager**

**The Appraisal Foundation**

1155 15th Street, NW, Suite 1111

Washington, DC

aida@appraisalfoundation.org

office phone 202.624.3058

www.appraisalfoundation.org



**Connect with Us!**



*This message and attachments, if any, are intended for use by the named addressee(s) only and contain information that is confidential or private according to state or federal laws.  Publication, in any form, is strictly forbidden.  If you have received this electronic message in error, please notify Aida Dedajic at 202.624.3058 and/or via email, delete it completely from your computer, and maintain confidentiality of the message.  Any unauthorized disclosure, distribution, or use of the contents of this message is prohibited and subject to penalty of law.*

[Quoted text hidden]