IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALPHONSO NICHOLAS FAGGIOLO,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF RIDLEY PARK, et al.,<br><br>Defendants. | CIVIL ACTION<br>NO. 23-4920 |

**OPINION**

**Slomsky, J.**                                                                                                      **August 8, 2024**

## I.  INTRODUCTION

This case arises from Defendants' tax collection efforts under Pennsylvania law.  Plaintiff brings nine (9) federal- and state-based challenges to these efforts as applied to him, seeking an injunction and damages.[1]  (See Doc. No. 1 at ¶¶ 227-313, 330.)  Currently before the Court are Defendants' Motions to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.  (Doc. Nos. 11, 13, 15, 16.)

---

[1]   In the Complaint, Plaintiff brings nine (9) claims for relief under four (4) statutes:

1. Six claims for deprivation of rights against each Defendant individually under 42 U.S.C. § 1983, (Doc. No. 1 at ¶¶ 227-89);

2. A single claim for conspiracy to interfere with civil rights against each Defendant under 42 U.S.C. § 1985 (Id. at ¶¶ 290-301);

3. A single claim for failure to prevent interference with civil rights against each Defendant under 42 U.S.C. § 1986 (Id. at ¶¶ 302-08); and

4. A single claim for deprivation of property rights under color of law against each Defendant under 42 U.S.C. § 1982 (Id. at ¶¶ 309-13.)

1

In their Motions, Defendants first argue that the Tax Injunction Act (the "Act" or "TIA") deprives this Court of jurisdiction to provide Plaintiff the relief he seeks in his nine (9) claims. See 28 U.S.C. § 1341.  The TIA provides, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  And because Pennsylvania's Municipal Claims and Tax Liens Act ("MCTLA") and administrative scheme under state law provide Plaintiff with a plain, speedy, and efficient remedy that may be had in Pennsylvania courts for his tax challenges, see 53 PA. STAT. AND CONS. STAT. §§ 7182, 8844(c)(1), the TIA deprives this Court of subject matter jurisdiction over Plaintiff's claims for injunctive relief.

Second, Defendants argue that the principle of comity deprives this Court of subject matter jurisdiction over Plaintiff's claims.[2]  The principle of comity involves the notion that federal courts should have a "proper respect for state functions" and the division of power between the federal government and the several states.  Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 112 (1981) (quoting Younger v. Harris, 401 U.S. 37, 44-45 (1971)).  As relevant here, the principle of comity precludes taxpayers from bringing challenges to state tax schemes in federal courts under 42 U.S.C. §§ 1982, 1983, 1985, and 1986 if (1) the state provides remedies that are "plain, adequate, and complete" and (2) reviewable by the United States Supreme Court.  See McNary, 454 U.S. at 115-16 (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 605 (1981)).[3]  Because

---

[2]  While Defendants address comity as a limit on the Court's subject matter jurisdiction, the principle of comity is non-jurisdictional. Direct Marketing Ass'n v. Brohl, 575 U.S. 1, 15 (2015).  Rather, as the United States Supreme Court emphasized, "[t]he comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." Levin v. Commerce Energy, Inc., 560 U.S. 413, 421-22 (emphasis added) (noting doctrine's constraints are of particular force in constitutional challenges to state tax schemes).

[3]  The United States Supreme Court concluded there is no significant difference between remedies that are "plain, adequate, and complete" under the principle of comity and those which are "plain,

Pennsylvania's MCTLA and administrative scheme provide tax challengers plain, adequate, and complete state-law remedies, the principle of comity precludes Plaintiff's claims for damages.

## II.   STATEMENT OF FACTS

In December 2023, Plaintiff initiated this action against six Defendants for their involvement in the assessment and collection of municipal real estate taxes and certain fees against Plaintiff's three properties.[4] (See Doc. No. 1 at ¶¶ 9, 21-25.) The six Defendants in this action are: (1) the Borough of Ridley Park (the "Borough"), a subdivision of Pennsylvania; (2) Richard Tutak, the Manager of Ridley Park; (3) Michelle Portnoff and (4) Robert P. Daday, attorneys employed by Portnoff Law Associates; (5) the Honorable Barry C. Dozer, a Judge with the Court of Common Pleas of Delaware County; and (6) Mary J. Walk, the Director of the Office of Judicial Support of Delaware County. (Id. at ¶¶ 10-15.) Each of the subject properties is located in Ridley Park, Pennsylvania, and the liens against these properties result from Plaintiff's purported delinquencies for non-payment of real estate taxes, sewer fees, and trash collection fees in 2019 and 2020.[5] (Id. at 5, 135-40.)

---

speedy, and efficient" under the TIA. McNary, 454 U.S. at 116 n.8. Accordingly, this Court will employ the same analysis to review state-law remedies under the TIA and the principle of comity.

[4] While it is not clear whether Plaintiff holds title to these three properties (compare Doc. No. 1 at ¶¶ 8-9, with Doc. No. 11-1 at 3), the question of ownership under Pennsylvania law need not be resolved to dispose of this case, because as will be discussed below, this case will be dismissed on jurisdictional grounds. As a result, the Court need not address the merits of either party's argument on the question of ownership.

[5] Two of the parcels are located at 215 Kane Avenue, Ridley Park, Pennsylvania, and the remaining parcel is located at 505 Johnson Avenue, Ridley Park, Pennsylvania.

On an annual basis, the Borough enacts ordinances imposing real estate taxes, sewer fees, and trash collection fees for the year.[6] (Doc. No. 13-6 at 4.) In addition, the Borough requires all new buildings and residences to connect to the public sewer system, and roughly 98% of all residential properties are connected to this system. (Doc. No. 13-2 at ¶ 4.) Furthermore, the Borough deposits all revenue raised from the sewer fee in a general fund. (Id. at ¶ 8.)

Regarding the trash collection fees, while residential properties containing four or more living units in the Borough must employ private trash hauling services, the Borough provides trash collection services to all residential properties containing fewer than four living units, for which it charges an annual sum. (See id. ¶¶ 10-11.) The Borough also puts all revenue raised through trash collection fees into its general fund. (Id. ¶ 14.)

The material facts underlying this case begin in 2019, when Plaintiff alleges Defendants Portnoff and Daday, acting as "debt collectors," contacted him about outstanding debts owed to the Borough arising from real estate taxes, sewer fees, and trash collection fees assessed against his properties. (Doc. No. 1 at 15, 135-40.) Matters escalated between the parties when, on July 27, 2021 Defendants Daday and Walk, acting under the MCTLA, filed municipal liens against Plaintiff's three properties with the Office of Judicial Support for the Court of Common Pleas of Delaware County. (Id. at ¶ 42-43.) Though Plaintiff's Complaint does not detail the final resolution of these cases, Defendants' exhibits suggest that the Court of Common Pleas entered judgment in favor of the Borough in each of the three underlying state actions, and the time to

---

[6] In 2018, for instance, the Borough enacted ordinances 2018-2, 2018-3, and 2018-4, fixing real estate taxes, trash collection fees, and sewer fees for 2019. (Doc. No. 13-1 at 1-5.) In 2019, the Borough enacted another series of ordinances establishing the real estate tax rate, trash collection fees, and sewer fees for 2020. (Id. at 6-8.)

appeal the judgments has passed. (See e.g., Doc. No. 15-11 at 5-6; Doc. No. 11-1 at 43-44.) Plaintiff now brings this action in federal court.

In January 2024, Defendants filed four Motions to Dismiss (Doc. Nos. 11, 13, 15, 16), all raising similar arguments. Specifically, Defendants argue Plaintiff's Complaint should be dismissed because this Court lacks subject matter jurisdiction under the TIA and principle of comity. (See id.) Plaintiff filed Responses in Opposition. (See e.g., Doc. No. 19.) Defendant's Motions to Dismiss are now ripe for disposition by this Court.

### III. STANDARD OF REVIEW

"When a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the rule 12(b)(1) challenge first, because, if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed." Wyeth & Cordis Corp. v. Abbot Labs., No. 8-230, 2008 WL 203685, at *2 (D.N.J. May 8, 2008); see also Tagayun v. Stolzenburg, 239 F. App'x 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of a case.").

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, Plaintiff bears the burden of persuasion to convince this Court it has jurisdiction over the matter. See Gould Elecs. Inc. v United States, 220 F.3d 169, 178 (3d Cir. 2000). And when reviewing a Rule 12(b)(1) motion, this Court must first determine whether the motion presents a "'facial' attack" or a "'factual' attack" on the claims in issue, as the resolution of this matter determines "how the pleading must be reviewed." Const. Party of Pa. v. Aichele, 757 F.3d. 347, 357 (3d Cir. 2014) (quoting In re Schering Plough Corp. Intron., 678 F.3d 235, 243 (3d Cir. 2012)).

A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider all the allegations in the complaint as true.'" Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d Cir. 2006)); see also Const. Party of Pa., 757 F.3d at 758 (reasoning facial attack is an argument that considers the claim on its face and asserts it is insufficient to invoke subject matter jurisdiction). As a result, this Court may only consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. Caldwell v. Township of Middletown, No. 13-762, 2013 WL 6210433, *2 (E.D. Pa. Nov. 26, 2019).

A factual challenge, on the other hand, "concerns the actual failure of a [plaintiff's] claim to comport [factually]" with the court's jurisdictional requirements. Const. Party of Pa., 757 F.3d at 358 (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)) (reasoning this challenge raises argument that "the facts . . . do not support the asserted jurisdiction"). Reviewing such challenges, the trial court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1977). In other words, "no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

## IV. DISCUSSION

The Court must decide whether the TIA and principle of comity prevent the Court from ruling on the merits of Plaintiff's nine claims. Plaintiff argues that the Court has jurisdiction to hear his claims based on sundry theories involving the Court's federal question jurisdiction.[7] (Doc.

---

[7] For example, Plaintiff contends 28 U.S.C. § 1331 provides the Court with federal question jurisdiction, because he alleges violations of the Fourth, Fifth, and Fourteenth Amendments to the Constitution. (Doc. No. 1 at ¶ 17.) Section 1331 provides, "the district courts shall have original

6

No. 1 at ¶ 17.)  Defendants, on the other hand, argue the TIA and principle of comity deprive the Court of jurisdiction over this action.[8]  (See e.g., Doc. No. 11-1 at 32-33.)

Defendants' arguments are persuasive.  With respect to Plaintiff's claims for injunctive relief, the TIA precludes federal district courts from (1) enjoining the assessment, levy or collection of state taxes where (2) a "plain, speedy and efficient" remedy exists in the courts of the state.  28 U.S.C. § 1341.  With respect to Plaintiff's claims for damages under 42 U.S.C. §§ 1982, 1983, 1985, and 1986, the principle of comity precludes taxpayers from bringing such challenges to state tax schemes in federal courts if (1) the state provides remedies that are "plain, adequate, and complete" and (2) are reviewable by the United States Supreme Court.  See McNary, 454 U.S. at 115-16 (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 605 (1981)).  These principles are met under Pennsylvania state law and the jurisdiction of the United States Supreme Court to hear appeals from the highest court in a state, which in this case would be the Pennsylvania Supreme Court.

---

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff also suggests 28 U.S.C. § 1343(a)(3) confers jurisdiction on the Court, because he seeks to prevent imminent deprivation of his rights under color of state law.  (Doc. No. 1 at ¶ 17.)  This Section provides:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

28 U.S.C. § 1343(a)(3).

[8]  Defendants bring facial challenges to Plaintiff's claims insofar as these claims challenge liens resulting from real estate taxes and factual challenges to the claims insofar as they challenge liens resulting from sewer and trash fees.

**A. The Tax Injunction Act Applies to Plaintiff's Request for an Injunction**

The TIA applies to Plaintiff's claims for injunctive relief because he challenges real estate taxes, sewer fees, and trash collection fees which are now liens against his properties. (See e.g., Doc. No. 1 at 81, 137). According to the TIA, federal district courts "shall not [1] enjoin, suspend, or restrain the [2] assessment, levy or collection of any tax under State law where [3] a plain, speedy and efficient remedy may be had in the courts of such State." [9] 28 U.S.C. § 1341.

When determining whether a claim is precluded by the TIA, courts consider "whether the relief sought . . . would 'enjoin, suspend or restrain the assessment, levy or collection of any tax under state law.'" Brohl, 575 U.S. at 7 (quoting 28 U.S.C. § 1341). As the court observed in Dommel Properties, LLC, the gravamen of this test is whether "the effect of the [plaintiff's] lawsuit is to challenge the assessment, levy or collection' of a tax." Dommel Properties, LLC v. Jonestown Bank & Trust Co., No. 11-cv-2316, 2013 WL 1149265, at *6 (M.D. Pa. March 19, 2013). Accordingly, the Act precludes district courts from entering either injunctive or declaratory relief respecting the assessment, levy, or collection of a tax under state law. See California v. Grace Brethren Church, 457 U.S. 393, 411 (1982). Observing the breadth of the Act's prohibitions, the Third Circuit Court of Appeals has reasoned, the "Supreme Court has expanded the scope of the Act to exclude virtually all challenges to state and local taxation from federal courts." Behe v.

---

[9]   In interpreting and applying the TIA, the United States Supreme Court has reasoned that the Act provides a "jurisdictional rule" that deprives federal district courts of jurisdiction over cases brought to challenge state taxes. Arkansas v. Farm Credit Servs. of Central Ark., 520 U.S. 821, 825-26 (2004). Additionally, the Supreme Court has cautioned that district court involvement in such cases would permit state taxpayers to circumvent state-level procedures for raising legal challenges and introduce risk and disarray into the state budgeting process. See Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 511, 527 (1981) (emphasizing that federal constitutional issues, such as Fourteenth Amendment violations, are likely to turn on issues of state law, which are more properly resolved in state courts).

Chester Cnty. Bd. of Assessment Appeals, 952 F.2d 66, 68 (3d Cir. 1991) (internal quotations omitted) (noting the Act precludes declaratory and injunctive relief).

### B. Principle of Comity Applies to Plaintiff's Request for Monetary Damages

Another issue this Court must consider is whether the principle of comity applies to Plaintiff's claims for damages. In McNary, the Supreme Court explained the principle of comity in the context of an action to recover damages for violations of federal constitutional rights resulting from defendants' administration of its state tax system. See 454 U.S. at 106. Describing the Supreme Court's comity jurisprudence, the Court explained that comity is rooted in the notion that federal courts should provide "a proper respect" for state functions and appreciate that "the National Government will fare best if the states and their institutions are left free to perform their separate functions in separate ways." See id. at 112 (quoting Younger v. Harris, 401 U.S. 37, 44-45 (1971)) (observing Younger provides the "fullest articulation" of the principle of comity). Accordingly, as the McNary court continued, while the federal government may be eager to protect federal rights and interests, the federal government must do so "in ways that will not unduly interfere with the legitimate activities of the states." Id.

Accordingly, the Supreme Court held that the principle of comity bars taxpayers "from asserting § 1983 actions against the validity of state tax systems in federal courts" so long as a state provides tax challengers remedies that are (1) "plain, adequate, and complete" and (2) reviewable by the Supreme Court. [10] See McNary, 454 U.S. at 115-16 (citing Huffman v. Pursue,

---

[10] While comity is rooted in the law of equity and precedes enactment of the TIA, McNary, 454 U.S. at 108, the McNary court emphasized the applicability of comity to "actions seeking a remedy other than injunctive relief," McNary, 454 U.S. at 111 (discussing post-TIA "vitality" of comity principle in Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 (1943)). Furthermore, as the court emphasized, the focus is not on "the specific form of relief requested" but on whether "in every practical sense [it] operate[d] to suspend collection of the state taxes until litigation [was] ended." McNary, 454 U.S. at 111 (quoting Great Lakes Dredge & Dock Co., 319 U.S. at 299).

Ltd., 420 U.S. 592, 605 (1981)). Were a court to award damages in an action under Section 1983, the McNary court reasoned, the court must first halt the operation of a state tax scheme by declaring the scheme unconstitutional and then find defendants violated a petitioner's constitutional rights when administering the state's tax system. Id. at 106-07, 116. Cautioning against this kind of intervention, the court emphasized that "damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim." Id. at 116. "We consider such interference," the Supreme Court emphasized, "to be contrary to the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts.'"[11] Id. (quoting Matthews v. Rogers, 284 U.S. 521, 525 (1932)).

Here, the principle of comity applies to each of Plaintiff's claims for damages. Like the plaintiffs in McNary, who sought monetary damages under Section 1983 for state tax officials' alleged infringement of plaintiffs' constitutional rights, six of Plaintiff's nine claims seek monetary damages under Section 1983 for alleged constitutional deprivations resulting from Defendants' tax collection efforts under Pennsylvania law. (See Doc. No. 1 at ¶¶ 227-289, 330-348).

Similarly, while not directly addressed by the Supreme Court in McNary, the principle of comity also applies to Plaintiff's remaining claims for damages under 42 U.S.C. §§ 1982, 1985, and 1986. This is so because, like the situation faced by the Supreme Court in McNary, where awarding a claimant damages would require a declaration that the defendants' administration of a

---

[11] Considering the relationship between the TIA and principle of comity, the Third Circuit Court of Appeals observed that McNary, the TIA, and the principle of comity combine to bar federal courts from entertaining "a suit posing either an equitable or legal challenge to state or local taxes" where there are sufficient remedies available in state courts. Kerns v. Dukes, 153 F.3d 96, 101 (3d Cir. 1998).

state tax scheme violated plaintiffs' constitutional rights, Plaintiff is requesting this Court to declare that Defendants, in administering Pennsylvania's tax scheme, violated his federally protected rights under the Fourteenth Amendment. (See Doc. No. 1 at ¶¶ 290, 302, 309.) Such a finding, however, would result in exactly the kind of judicial "interference" with state taxation schemes the Supreme Court in McNary found "contrary to the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts,'" see McNary, 454 U.S. at 116.

### C. The Liens on Plaintiff's Properties are Taxes under the Tax Injunction Act and the Principle of Comity

Next, the Court must consider whether the real estate taxes, sewer fees, and trash collection fees are taxes that may not be enjoined, suspended or restricted by this Court. To distinguish between a tax and a fee under the TIA and the principle of comity, three factors guide this Court: "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." Trading Co. of N. Am., Inc., 47 F.Supp.2d at 568 (quoting Bidart Bros v. Cal. Apple Comm'n, 73 F.3d 925, 931 (9th Cir. 1996)). Under the third prong, "even assessments that are segregated from general revenues are taxes under [the TIA] if expended to provide a general benefit to the public." Id. at 569 (internal quotations omitted) (quoting Bidart Bros., 73 F.3d at 932).

Various municipal charges have received judicial recognition as taxes under the TIA and the principle of comity. See id. In Trading Company of North America, the court reviewed a challenge to the assessment of a township's sewer charges. Id. at 565, 567. Applying the first factor, the court noted that the defendant's status as a township—as opposed to an administrative agency—favored finding the sewer charge was a tax under the TIA. See id. at 568. Next, because

11

(1) the township's code required most improved buildings to be connected to the town's sewer system and (2) in excess of 90% of qualifying properties were, in fact, connected to this system, the court found the charge was broadly imposed; hence, the second prong, too, suggested the charge was a tax under the TIA. See id. at 568-69. Finally, while the funds raised from the sewer charge were separated from the town's general revenues and used for special purposes, the court emphasized these funds were overwhelmingly used for the public benefit, which favored a finding that the charge is a tax. Id. at 569. Having weighed these three factors, the court viewed the sewer charge as a tax under the TIA and the principle of comity. See id.

Here, first, the real property taxes are taxes. This is evident from the face of the Complaint and is not contested. (See e.g., Doc. No. 1 at 135-36; see also Doc. 13-1). Second, the sewer fees imposed by the Borough are properly viewed as a tax. The Borough Council—a legislative body—imposed the sewer fees on Plaintiff's properties pursuant to ordinances in effect in 2019 and 2020. (Doc. No. 13-1 at 4, 7.) And, like the charges in Trading Company of North America, where 90% of properties were connected to the town's sewer system, the Borough's sewer fees are broadly applicable because (1) the Borough requires all new buildings and residences connect to a public sewer system and (2) roughly 98% of all residential properties are connected to this sewer system. (Doc. No. 13-2 at ¶ 4.) Finally, all revenues raised from this fee go into the Borough's general fund. (Id. at ¶ 8.)

The Borough's trash collection fees, too, are taxes. The Borough Council imposes these fees on an annual basis, and these fees are broadly applicable. (See id. at ¶ 10.) While residential properties containing four or more living units in the Borough must employ private trash hauling services, the Borough provides trash collection services to all residential properties containing fewer than four living units, for which it charges an annual fee. (See id. at ¶¶ 10-11.) Finally,

mirroring its collection practice for sewer fees, the Borough puts all revenue raised through trash collection fees in its general fund, not a specific, segregated account. (Id. at ¶ 14.) Consequently, the real estate taxes and the sewer and trash collection fees assessed by the Borough against Plaintiffs properties are taxes for purposes of the TIA and the principle of comity.

### D. Pennsylvania Law Provides Plaintiff Adequate Remedies for Purposes of the TIA and Principle of Comity[12]

This Court must now determine whether Pennsylvania law provides Plaintiff with an adequate procedural remedy for his tax challenges. For remedies in state court to be "plain, speedy, and efficient" within the meaning of the TIA and the principle of comity, remedies in state court must "meet certain minimal procedural criteria." See Gass v. County of Allegheny, 371 F.3d 134, 137 (3d Cir. 2004) (emphasis in original) (quoting Rosewell, 450 U.S. at 512) (noting state's remedy need not be the "best, most convenient, or speediest" remedy). To meet the procedural requirements, the state remedy must (1) provide the taxpayer "a full hearing and judicial determination of the controversy[,]" and (2) this judicial determination must be appealable to the United States Supreme Court. See id. at 137 (quoting Rosewell, 450 U.S. at 513).

Pennsylvania's Municipal Claims and Tax Lien Act provides those against whom municipal tax claims are filed with a plain, speedy, and efficient remedy. See 53 PA. STAT. AND CONS. STAT. § 7182. At any point in the proceedings, the MCTLA enables any defendant named in a municipal tax claim to intervene and defend against the claim. See id. Furthermore, by making use of the MCTLA's scire facias provisions, any person against whom a claim is filed may

---

[12] As noted, the McNary court concluded there was no significant difference between remedies that are "plain, adequate, and complete" under principles of comity and those which are "plain, speedy, and efficient" under the TIA. McNary, 454 U.S. at 116 n.8. Accordingly, this Court will employ the same analysis to review state-law remedies under the TIA and principle of comity.

13

challenge the validity of the municipal lien.[13] See 53 PA. STAT. AND CONS. STAT. § 7184; see also Penn Township v. Hanover Foods Corp., 847 A.2d 219, 223 (Pa. Commw. Ct. 2004) ("[A] property owner that is aggrieved by a municipal lien, which is not defective on its face, may obtain an adjudication as to the validity of the lien by serving notice upon the claimant municipality to issue a scire facias on the claim.").[14]

Previous cases from this District Court further buttress the conclusion that Pennsylvania law provides those challenging tax liens adequate remedies. See Lehigh Valley Props. v. Portnoff L. Assocs., No. 19-4892, 2020 WL 1984889, at *6 (E.D. Pa. Apr. 27, 2020). In Lehigh Valley Properties, plaintiffs challenged defendants' method of collecting taxes, seeking damages and injunctive relief. Id. at *1. Ruling the TIA bars plaintiffs' request for injunctive relief, the court reasoned that the MCTLA, including its scire facias procedures, "constitutes a 'plain, speedy and efficient remedy' for purposes of the TIA." Id. at *5 (emphasizing MCTLA enables property owners to challenge tax liens and raise all defenses). As to the plaintiffs' request for damages, the court held Pennsylvania courts afford challengers adequate remedies—depriving the court of jurisdiction over the plaintiffs' federal and state actions—because state courts have the competence and authority to adjudicate claims arising under the laws of the United States. See id. at *6 (citing

---

[13] Black's Law Dictionary defines scire facias as "[a] writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be enforced, annulled, or vacated, or why a dormant judgment against that person should not be revived." Sire Facias, Black's Law Dictionary (12th ed. 2024). In the original Latin, the phrase means "you are to make known, show cause." Id.

[14] The Hanover court identified three procedural alternatives available to parties to a municipal claims action: (1) obtain a hearing on the claim by filing and serving upon the municipality a notice to issue a writ of scire facias; (2) the municipality may pursue a writ of scire facias; or (3) the parties may do nothing. Hanover Foods Corp., 847 A.2d at 224 (quoting Borough of Ambler v. Regenbogen, 713 A.2d 145, 148 (Pa. Cmmw. Ct. 1998)).

Tafflin v. Levitt, 493 U.S. 455, 458 (1990)). Accordingly, the court held the TIA and principle of comity deprive it of jurisdiction over the plaintiffs' challenges. See id. at *6.

Pennsylvania law also provides judicially reviewable administrative remedies to property owners aggrieved by a tax assessment, enabling any such persons to challenge assessments on appeal to the state's tax board. See 53 PA. STAT. AND CONS. STAT. § 8844(c)(1). If a challenger is not satisfied with the board's resolution of the matter, the challenger may appeal the board's decision to the state's Court of Common Pleas, see 53 PA. STAT. AND CONS. STAT. § 8854, which may be subject to further review in the Pennsylvania Commonwealth Court and Pennsylvania Supreme Court, see Pa. R.A.P. 901, et seq. And as the Pennsylvania Supreme Court has long emphasized, these administrative procedures are particularly relevant because most challenges to real estate taxes turn on questions of statutory application, rather than the facial validity of an act itself. See Rochester & Pittsburgh Coal Co. v. Bd. of Assessment & Revision, 266 A.2d 78, 79 (Pa. 1970) (reasoning, in such cases, the administrative body charged with a statute's application should have first crack at reviewing challenges thereto). And a final judgment in the Pennsylvania Supreme Court may be reviewed by the United States Supreme Court. See 28 U.S.C. § 1257 (setting forth the Supreme Court's appellate jurisdiction over state supreme court decisions).

In sum, the MCTLA and Pennsylvania's administrative review provisions enable Plaintiff to bring his tax challenges, raise any available defenses, and provide him a "full hearing and judicial determination of the controversy." [15] See Gass, 371 F.3d at 137 (quoting Rosewell, 450 U.S. at 512). Furthermore, had Plaintiff taken advantage of the board's review process, a decision

---

[15] Plaintiff participated in the proceedings in the Delaware County Court of Common Pleas regarding his properties. (See e.g., Doc. Nos. 15-3, 15-4, 15-5.) He filed a motion in the state court proceedings to strike one of the municipal claims, while also raising various jurisdictional challenges. (See Doc. No. 15-3 at 3.)

by the board would have been reviewable up to the Pennsylvania Supreme Court, see Pa. R.A.P. 901, et seq., and any final judgment by that court would, in turn, be reviewable by the United States Supreme Court.  As a result, Pennsylvania law provides those in Plaintiff's position with adequate state-law remedies that are plain, speedy, and efficient for his tax challenges for purposes of the TIA and principle of comity.

V.   **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint will be granted.  An appropriate Order follows.